Ahren A. Tiller Esq. [SBN: 250608]
BLC Law Center, APC
1230 Columbia St., Ste 1100
San Diego, CA 92101
Phone (619) 894-8831
Facsimile: (866) 444-7026

Attorneys for Plaintiff
CHRISTOPHER COUSINS

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER COUSINS, <br><br> Plaintiff, <br><br> vs. <br><br> CREDENCE RESOURCE MANAGEMENT, LLC, and DOES 1-10, <br><br> Defendant(s), | Case No.: '22CV1410 BEN MDD <br><br> **COMPLAINT FOR DAMAGES FOR (1) VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CAL. CIV. CODE §§ 1788-1778.32); (2) VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICE ACT (15 U.S.C. §§ 1692 ET. SEQ.); (3) NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. § 227 ET. SEQ.); AND (4) WILLFUL VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. § 227 ET. SEQ.)** <br><br> JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

### INTRODUCTION

1. CHRISTOPHER COUSINS (hereinafter referred to as "Plaintiff"), by and through his Counsel of record, brings this action against CREDENCE RESOURCE MANAGEMENT, LLC (hereinafter referred to as "CRM" or "Defendant") and DOES 1-10 (hereinafter collectively referred to as "Defendants") pertaining to actions by Defendants to unlawfully collect a debt allegedly owed by Plaintiff through the use of an Automated Telephone Dialing System and/or Artificial or Prerecorded Voice in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et. seq., ("TCPA"), the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. C. §§ 1788-1788.32 ("RFDCPA"), and the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et. seq., ("FDCPA") thereby invading Plaintiff's privacy, and causing Plaintiff damages.

2. The California legislature determined that unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system. The legislature further determined there is a need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty, and due regard for the rights of others. The legislature's explicit purpose of enacting the Rosenthal Fair Debt Collection Practices Act of California (hereinafter "RFDCPA") was to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts, and to require debtors to act fairly in entering into and honoring such debts.[1]

3. The United States Congress determined that there is abundant evidence of the use

---

[1] CA Civil Code §§ 1788.1(a)-(b)

of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Prior laws and procedures for redressing these injuries were inadequate to protect consumers. Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts. Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce. Congress passed the Fair Debt Collection Practices Act (hereinafter "FDCPA") in 1977 to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.[2]

4. The Telephone Consumer Protections Act ("TCPA") was designed to prevent calls like the ones described within this Complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs.*, LLC, 132 S. Ct. 740, 744 (2012).

5. In enacting the TCPA, Congress noted that "evidence . . . indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, *regardless of the type of call*[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, ¶ 13, 105 Stat. 2394, 2395 (1991) [emphasis added].

---

[2] 15 U.S.C. § 1692(a)-(e)

6. As Judge Easterbrook of the Seventh Circuit explained in a TCPA case regarding calls similar to this one:

> The Telephone Consumer Protection Act … is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.
>
> *Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637, 638 (7th Cir. 2012).

7. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**JURISDICTION AND VENUE**

8. This action is based on Defendants' violations of the RFDCPA which is found in California Civil Code Section 1788 - 1788.32, Defendants' violations of the TCPA which is found in Title 47 of United States Code Section 227, et. seq., and Defendants' violations of the FDCPA which is found in Title 15 of the United States Code Section 1692 et. seq.

9. This Court has jurisdiction over each Defendant, pursuant to 28 U.S.C. § 1331, as the unlawful practices alleged herein involve a federal questions under the TCPA and FDCPA.

10. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1)-(2), because all or some of the unlawful practices and violations of law alleged herein occurred and are occurring in the County of San Diego, California.  Furthermore, Defendants regularly conduct business within State of California, County of San Diego, and Plaintiff resides in San Diego County, California.

## PARTIES

11. Plaintiff is, and was at all times mentioned herein, a natural person residing in the County of San Diego, in the State of California.

12. Plaintiff is a natural person from whom a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiff, and therefore Plaintiff is a "debtor" as that term is describe by Cal Civ. Code §1788.2(h).

13. Plaintiff is allegedly obligated to pay a debt, and is a "consumer" as that term is defined by 15 U.S.C. § 1692(a)(3).

14. CRM is Nevada Limited Liability Company whose primary business purpose is the collection of debts on behalf of its clients.  Plaintiff and Defendants are all "persons" as that term is defined by Cal. Bus. & Prof. Code § 17201.

15. CRM is, and at all times mentioned herein, was a "person" as defined by 47 U.S.C. § 153(39).

16. CRM regularly attempts to collect through the use of mails, electronic communication, and telephone, "consumer debs" allegedly owed to its Clients, as that term is defined by Cal. Civ. Code § 1788.2(f).

17. CRM is a person who uses an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, or who regularly collects or attempt to collects, directly or indirectly, debts owed or due or asserted to be owed or due another and are therefore a debt collector as that term is defined by 15 U.S.C. § 1692(a)(6).

18. CRM collects debts on behalf of its clients for defaulted consumer loans and credit cards, and other similar obligations.  CRM collects on those consumer debts owed to its clients through the mail, electronic communication, and the telephone. Therefore, Defendant CRM is a "debt collector" as that term is defined by Cal.

Civ. Code §1788.2(c), and engages in "debt collection" as that term is defined by Cal. Civ. Code §1788.2(b).

19. This case involves money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. This action arises out of a consumer debt and "consumer credit" as those terms are defined by Cal. Civ. Code §1788.2(f).

20. At all times relevant hereto, CRM used, controlled and or operated an "automatic telephone dialing system" ("ATDS") as that term is defined by 47 U.S.C. § 227(a)(1) and used said ATDS and/or an automated or Prerecorded Voice ("Recorded Voice") as that term is defined in 47 U.S.C. 227(b)(1)(A), to make collection calls to Plaintiff's cellular telephone

## GENERAL ALLEGATIONS

21. On information and belief, Plaintiff alleges that on or about December of 2018, Plaintiff took out a Flexshopper, LLC credit account ("Credit Account"). The Credit Account was incurred for consumer purchases and not for business purposes.

22. On or about October 2019, due to financial hardships including income loss, Plaintiff went into default on the subject Credit Account.

23. At some point after October of 2019, but prior to December of 2021, the Credit Account was sold to Sadino Funding, LLC who engaged Defendant CRM to collect on behalf of Sadino Funding, LLC for the balance owed on the Credit Account.

24. Due to his financial hardship and inability to maintain his ongoing monthly debt obligations, Plaintiff retained Bankruptcy Law Center, APC ("BLC") to represent him regarding the defaulted Credit Account.

25. As part of this representation, Plaintiff's Counsel informed Plaintiff's creditors and debt collectors that Mr. Cousins had retained BLC Law Center, APC to represent him with regards to any alleged debts owed or being collected on.

26. On December 1, 2021, Plaintiff's Counsel sent a letter via a third-party mailing service directing CRM to cease and desist from calling Plaintiff regarding the Credit Account pursuant to the FDCPA and RFDCPA.

27. In the December 1, 2021 Cease and Desist letter ("Letter"), Plaintiff's Counsel provided Plaintiff's name and the last four digits of his social security number. In the Cease and Desist Letter, Plaintiff's Counsel further explained that demand was being made pursuant to Cal. Civ. Code §1788.14(c), that all further communication with Plaintiff cease and that any future communication be exclusively sent to Plaintiff's Counsel.

28. In said Cease and Desist Letter, Plaintiff specifically revoked any previously provided consent to contact Plaintiff via any means, which included his cell phone through the use of an Automated Telephone Dialing System ("ATDS") as that term is defined in 47 U.S.C. §227(a)(1), and/or an artificial and/or prerecorded voice ("Recorded Voice") as that term is defined in 47 U.S.C. §227(b)(1)(A).

29. Despite Plaintiff's clear request in writing for CRM to cease calling Plaintiff's cell phone, and his express revocation of any and all consent to call him via an ATDS and/or Recorded Voice, CRM has called Plaintiff's cellular telephone repeatedly through the use of an ATDS and/or Recorded Voice, often 1-3 times per day almost every day since, in violation of both the RDFCPA, FDCPA, and TCPA.

30. Despite the Letter from Counsel and Plaintiff's multiple oral requests to cease calling him, CRM's collection calls to Plaintiff continued unabated.

31. The collection calls described herein were made using equipment that had the capacity to store or produce telephone numbers to be called using a random or

sequential number generator, and to dial such numbers, and was therefore an automatic telephone dialing system ("ATDS") as that term is defined by 47 U.S.C. § 227(a)(1).

32. As is evidenced by the frequency and rapid succession of the call times and dates, the ATDS computer software automatically called the Plaintiff at certain times from random numbers, usually multiple times a day with varying call times.

33. Further, most of these calls made by CRM after receipt of the December 1, 2021 Letter contained an Artificial or Recorded Voice ("Recorded Voice") message as that term is defined in 47 U.S.C. 227(b)(1)(A).

34. CRM's calls to Plaintiff after receiving receipt of the Cease and Desist Letter contained an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

35. The multiple calls made by CRM or it's agents after December 1, 2021, were therefore made in violation of 47 U.S.C. § 227(b)(1).

36. Plaintiff has received so many collection calls by CRM that his voicemail has repeatedly filled up, preventing Plaintiff from receiving other important messages and incurring actual charges as a result of his cell phone plan.

37. Upon information and belief, CRM regularly makes autodialed telephone calls via the use of an ATDS and/or Prerecorded voice in order to collect on the subject consumer Credit Account.

38. Upon information and belief, CRM's telephone equipment has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

39. Upon information and belief, the telephone equipment used by CRM to place the calls at issue have the capacity to dial telephone numbers automatically from a stored list or database without human intervention, using a random or sequential number generator.

40. CRM'S collection calls to Plaintiff describe herein, were not made for emergency purposes, as defined by 47 U.S.C. § 227(b)(1)(A).

41. CRM placed the collection calls described herein to a telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

42. CRM's aforementioned conduct personally affected Plaintiff, as Plaintiff was frustrated and distressed that CRM repeatedly interrupted Plaintiff with unwanted call using an ATDS and/or Recorded Voice for collection purposes.

43. Through CRM's aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

44. CRM's calls forced Plaintiff to live without the utility of his cellular phone by occupying his cellular telephone with multiple unwanted calls, causing a severe nuisance and lost time.

45. CRM continues to call and harass Plaintiff despite written instructions that she has retained counsel and to cease all further contact with Plaintiff.

46. In total, Plaintiff has received at minimum over 100 collection calls from CRM through the use of an ATDS and/or Recorded Voice after CRM was notified on December 1, 2021 in writing to cease all further contact and revoking consent to call him via the use of an ATDS or Recorded Voice.

47. As a result of CRM's relentless and harassing collection calls Plaintiff has experienced anger and disbelief, and feelings of powerlessness, which have resulted in actual damages to Plaintiff as a result.

48. These calls have consumed his day and have caused a severe disruption to his life, due to their severe frequency.

49. As a direct and proximate result of the aforementioned harassment committed by Defendants, Plaintiff has suffered emotional distress.

50. Further, as a direct and proximate result of the aforementioned harassment committed by Defendants, Plaintiff has suffered monetary loss in the form of increased cellular telephone bills, loss of use of the utility of his cellular telephone, and other actual damages such as attorney's fees and costs to redress Defendant's conduct.

51. As a direct and proximate result of the hundreds of collection calls made by CRM and/or its agents and/or representative via the use of an ATDS and/or Recorded Voice, Plaintiff's voicemail system on his cellular telephone was filled up on multiple occasions to such a degree that he no longer qualified for a free tier of storage on his cellular phone, and as a direct and proximate result of CRM's aforementioned conduct Plaintiff was forced to incur fees for cloud storage for the additional voicemails.  Therefore, as a direct and proximate result of CRM's aforementioned conduct, Plaintiff incurred actual monetary out of pockets costs to his cloud storage plan as a result.

52. Further, Plaintiff was additionally forced to incur fees to his cellular telephone provider as a direct and proximate result of Defendant, CRM's incessant calls using up Plaintiff's cellular telephone minutes, thus Plaintiff incurred actual monetary out of pockets costs to his cellular telephone provider as well.

## CAUSES OF ACTION

## I.

## FIRST CAUSE OF ACTION

**VIOLATIONS OF ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT**

**(CAL. CIV. CODE § 1788.14(c))**

53. Plaintiff realleges and incorporates by reference Paragraphs 1 through 52, inclusive, as if fully set forth.

54. When Plaintiff's Counsel sent a Cease and Desist Letter referenced above to CRM on December 1, 2021, CRM was informed that Plaintiff had retained Counsel.

55. At all times after December 1, 2021 Defendant CRM was aware, or reasonably should have been aware, that Plaintiff was represented by an attorney, and that Plaintiff no longer wished to be contacted regarding this debt.

56. Cal. Civ. Code §1788.14(c) provides in relevant part,

    No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:

    (c) Initiating communications, other than statements of account, with the debtor with regard to the consumer debt, when the debt collector has been previously notified in writing by the debtor's attorney that the debtor is represented by such attorney with respect to the consumer debt and such notice includes the attorney's name and address and a request by such attorney that all communications regarding the consumer debt be addressed to such attorney, unless the attorney fails to answer correspondence, return telephone calls, or discuss the obligation in question. This subdivision shall not apply where prior approval has been obtained from the debtor's attorney, or where the communication is a response in the ordinary course of business to a debtor's inquiry.

57. By calling Plaintiff on his telephone over 100 times after the December 1, 2021 receipt of the Cease and Desist Letter, CRM violated Cal. Civ. Code §1788.14(c).

58. As a result of the constant collection calls from CRM, Plaintiff has experienced anxiety, fear and uneasiness. Plaintiff is constantly afraid to answer his phone and he cringes when his phone rings.

59. Therefore, as a direct and proximate result of the oppressive calls by CRM, totaling in excess of 100 collection calls, Plaintiff has suffered actual damages as a result of the Defendants' violations of the RFDCPA.

## II.

## SECOND CAUSE OF ACTION

## VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT

### (15 U.S.C. § 1692 et. seq.)

60. Plaintiff realleges and incorporates by reference Paragraphs 1 through 59, inclusive, as if fully set forth.

61. When Plaintiff's Counsel sent the December 1, 2021 Cease and Desist Letter referenced above to CRM, Defendants were informed that Plaintiff had retained Counsel.

62. At all times after December 1, 2021 Defendant CRM was aware, or reasonably should have been aware, that Plaintiff was represented by an attorney, and that Plaintiff no longer wished to be contacted regarding this debt.

63. 15 U.S.C. § 1692c(a)(2) states in relevant part,

> (a) Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt— (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer;..

64. Furthermore, 15 U.S.C. § 1692c(c) states in pertinent part,

> (c) If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt,

65. By calling Plaintiff on his telephone over 100 times after the December 1, 2021

receipt of the Cease and Desist Letter, CRM violated 15 U.S.C. §§ 1692c(c) and 1692c(a)(2).

66. As a result of the constant collection calls from CRM, Plaintiff has experienced anxiety, fear and uneasiness.

67. Therefore, as a direct and proximate result of the oppressive calls by CRM, totaling in excess of 100 collection calls, Plaintiff has suffered emotional distress.

## III.
## THIRD CAUSE OF ACTION
## NEGLIGENT VIOLATIONS OF THE TCPA
## (47 U.S.C. § 227 ET. SEQ.)

68. Plaintiff realleges and incorporates by reference Paragraphs 1 through 67, inclusive, as if fully set forth.

69. On December 1, 2021, Plaintiff revoked CRM's consent in writing to call him on his cellular telephone via the use of an ATDS and/or Recorded Voice.

70. The foregoing acts and omissions of CRM constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

71. As a result of CRM's negligent violations of 47 U.S.C. §227, *et. seq.*, Plaintiff is entitled to an award of $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

72. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

# IV.

## FOURTH CAUSE OF ACTION

### KNOWING AND/OR WILLFUL VIOLATIONS OT THE TCPA

### (47 U.S.C. § 227 ET. SEQ.)

73. Plaintiff realleges and incorporates by reference Paragraphs 1 through 72, inclusive, as if fully set forth.

74. The foregoing acts and omissions of CRM constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

75. Plaintiff's Counsel sent a formal Cease and Desist Letter expressly revoking consent to call Plaintiff via the use of an ATDS or Recorded Voice.

76. Since CRM continued to call Plaintiff despite indisputably being informed to not call Plaintiff on December 1, 2021 via a formal letter addressed to their mailing address, CRM's acts were willful.

77. As a result of CRM's knowing and/or willful violations of 47 U.S.C. §227, *et. seq.*, Plaintiff is entitled to an award of $1,500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

78. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff having set forth the claims for relief against Defendants herein, respectfully request this Court enter a Judgment against Defendant CRM as follows:

a. As to the First Cause of Action, an award of actual damages pursuant to Cal. Civ. Code §1788.30(a) according to proof, including compensatory damages for Plaintiff's emotional distress for the harassing telephone calls;

b. As to the First Cause of Action, an award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code §1788.30(b);

c. As to the First Cause of Action, an award of reasonable attorney's fees and costs pursuant to Cal. Civ. Code §1788.30(c);

d. As to the Second Cause of Action, an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) according to proof, including compensatory damages for Plaintiff's emotional distress for the harassing telephone calls;

e. As to the Second Cause of Action, an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A)

f. As to the Second Cause of Action, an award of reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

g. As to the Third Cause of Action, $500 in statutory damages for each and every one of Defendant's negligent violations of 47 U.S.C. §227(b)(1), pursuant to 47 U.S.C. § 227(b)(3)(B), and Injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A);

h. As to the Fourth Cause of Action, $1,500.00 in statutory damages for each and every one of Defendant's over 100 knowing and/or willful violations of 47 U.S.C. § 227(b)(3)(C), pursuant to 47 U.S.C. §227(b)(1); and

i. For such other and further relief as the Court may deem just and proper.

Dated: September 16, 2022          By:    /s/ Ahren A. Tiller
                                          Ahren A. Tiller, Esq.
                                          BLC Law Center, APC
                                          Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury on all issues triable by a jury.

Dated: September 16, 2022            By:   /s/ Ahren A. Tiller
                                            Ahren A. Tiller, Esq.
                                            BLC Law Center, APC
                                            Attorneys for Plaintiff